IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02794–MSK–KMT

DERRICK A. DAVIES,

     Plaintiff,

v.

ANTHONY P. YOUNG, in his official capacity as Chairman of the Colorado Board of Parole,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on Defendant's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)." (Doc. No. 7, filed Dec. 10, 2012). For the following reasons, the court recommends that Defendant's Motion to Dismiss be GRANTED.

### FACTUAL BACKGROUND

     The following factual background is derived from Plaintiff's "Civil Complaint" (Doc. No. 1, filed Oct. 22, 2012 [Compl.]) unless otherwise noted. Plaintiff is an inmate in the Colorado Department of Corrections (CDOC), incarcerated at the Fremont County Correctional Facility (FCF), who was sentenced to an indeterminate term of imprisonment under the Colorado Sex Offender Lifetime Supervision Act ("SOLSA"), Colo Rev. Stat. § 18-1.3-1001 *et seq*. (*See* Compl. ¶ 27.) Plaintiff maintains that certain policies promulgated or maintained by Defendant, in his official capacity as Chairman of the Colorado Board of Parole (hereinafter "Parole

Board"), violate the United States Constitution's Bill of Attainder Clause, the Eighth Amendment's prohibition on cruel and unusual punishment, and the Fourteenth Amendment's Due Process Clause.

On November 22, 2005, Plaintiff pled guilty to and was convicted of a Class IV Felony sex offense, pursuant to Colo. Rev. Stat. § 18-3-405.3(1), in Colorado state court.  (Compl. ¶ 26.) SOLSA provides that "the district court having jurisdiction shall sentence a sex offender to the custody of the [CDOC] for an indeterminate term of at least the minimum of the presumptive range specified in section 18-1.3-401 for the level of offense committed and a maximum of the sex offender's natural life."  Colo Rev. Stat. § 18-1.3-1004(1)(a).  As such, on May 1, 2006, Plaintiff was sentenced to the custody of the CDOC for an indeterminate term of three years to life.  (*Id.* ¶ 27.)

SOLSA also provides that "[e]ach sex offender sentenced pursuant to this section shall be required as a part of the sentence to undergo treatment."  Colo. Rev. Stat. § 18-1.3-1004(3). According to the Colorado Legislature, the purpose behind this statutorily mandated treatment is as follows:

> The general assembly hereby finds that the majority of persons who commit sex offenses, if incarcerated or supervised without treatment, will continue to present a danger to the public when released from incarceration and supervision. The general assembly also finds that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in both state dollars and loss of human potential. The general assembly further finds that some sex offenders respond well to treatment and can function as safe, responsible, and contributing members of society, so long as they receive treatment and supervision. The general assembly therefore declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state.

Colo. Rev. Stat. § 18-1.3-1001.  In light of this legislative declaration, Plaintiff maintains that, once an inmate has served the mandatory minimum term of incarceration, the indeterminate "to-life" phase of a sex offender's sentence is "intended by the Colorado legislature solely to 'provide for treatment and supervision rather than to punish sex offenders.'"  (Compl. ¶ 12) (quoting *Vensor v. People,* 151 P.3d 1274, 1278 (Colo. 2007).)

Once a sex offender has completed his or her indeterminate sentence, SOLSA requires that the Parole Board "schedule a hearing to determine whether the sex offender may be released on parole."  Colo. Rev. Stat. § 18-1.3-1006(1)(a).  In determining whether to release a sex offender on parole, the Parole Board "shall determine whether the sex offender has successfully progressed in treatment and would not pose an undue threat to the community if released under appropriate treatment and monitoring requirements and whether there is a strong and reasonable probability that the person will not thereafter violate the law."  *Id.*  In addition, the CDOC is required to make "recommendations to the parole board concerning whether the sex offender should be released on parole and the level of treatment and monitoring that should be imposed as a condition of parole."  *Id.*  Those recommendations must be "based on the criteria established by the [Sex Offender Management Board, or "SOMB"] pursuant to section 18-1.3-1009."  *Id.*

According to Plaintiff, the SOMB's "Criteria for Release From Prison to Parole" include two considerations: (a) "sufficient progress in treatment," and (b) whether "the sex offender would not pose an undue threat to the community."  (Compl. ¶ 15.)  Plaintiff argues that, unlike with general population inmates who are not sentenced under SOLSA, it is inappropriate for the parole board to evaluate punitive consideration, such as "[a]ggravating circumstances of the

offense," when evaluating whether to release a sex offender inmate on parole.[1]  (*See id.* ¶¶ 16-20.)

On February 2006, a Psychosexual Evaluation, submitted as part of Plaintiff's pre-sentence investigation, allegedly revealed that Plaintiff's is a "low risk" for re-offense and "can be safely treated in a community setting while under community supervision." (*Id.* ¶ 28.)  As of May 2009, Plaintiff had served the minimum mandatory three-year period of his sentence.  (*Id.* ¶ 29.)  As such, Plaintiff maintains the duration of his incarceration for the "indeterminate to-life rehabilitation phase" is now dependent upon "(a) his successful progression in treatment, and (b) determination as to whether he will pose an undue threat to the community if released under appropriate treatment and monitoring requirements." (*Id.*)

Plaintiff entered Phase I of the Sex Offender Treatment and Monitoring ("STOMP") at FCF in June 2008.  (*Id.* ¶ 30.)  Plaintiff completed Phase I in January 2009.  (*Id.* ¶ 31.)  Plaintiff subsequently entered and continues to participate in FCF Modified Phase II Group and Follow-Up Group sex offender treatment.  (*Id.*)  Plaintiff maintains that his successful participation in these treatment programs qualify him to meet the STOMP criteria for a recommendation for release into the community.  (*Id.*)

On May 17, 2010, the CDOC issued a written "Parole Board Summary," which recommended Plaintiff for parole as follows:

---

[1] Plaintiff concedes, however, that punishment concerns are an appropriate basis for deferring a parole determination as to all inmates, including sex offenders.  (Compl. ¶ 21.)

> Offender Davies *does* meet this entire criteri[a]: 1. He is currently participating in the FCF Modified Phase II Follow [U]p Group; 2. He has completed nondeceptive polygraph assessments...; 3. He has no reports of institutional acting out . . .; 4. He has defined and documented his sexual offense cycle; 5. He has an approved support person . . .; 6. He is compliant with the recommendation by [C]DOC for psychiatric recommendations for medication; and 7. There are no indications of sadism or psychopathy which would cause offender to present an undue threat to community. *This offender meets Sex Offender Management Board treatment criteria to receive a recommendation to progress to parole.*

(*Id.* ¶ 32) (emphasis in original).

Plaintiff appeared before the Parole Board in May 2011. (*Id.* ¶ 33.) On May 31, 2011, the Parole Board issued a "Notice of Colorado Parole Board Action." (*Id.*) Therein, the Parole Board denied Plaintiff parole, and deferred consideration until June 2013, based on the following reasons: (a) "Aggravating Factors (Circumstances of Offense)," and (b) "Risk Control Problems – Needs Continued Correctional Treatment." (*Id.*) Plaintiff alleges that the Parole Board did not provide any further explanation of how Plaintiff posed "Risk Control Problems." (*Id.*)

The Parole Board's policy manual also allegedly (1) permits "[t]he victim or designee []" to leave [the parole hearing] prior to the offender being presented," and (2) provides that "victims or their designated representatives are the ONLY individuals ensured the right to speak" at a parole hearing. (*Id.* ¶ 22.) As such, at Plaintiff's parole hearing, the victim was permitted to speak as to why Plaintiff should not be released. (*Id.* ¶ 34.) Plaintiff maintains that he was denied any opportunity to confront and question the victim as to the accuracy or veracity of her statements. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff's Complaint, filed on October 22, 2012, asserts five claims pursuant to 42 U.S.C. § 1983.  (*See* Compl.)  Plaintiff's first claim alleges that the Parole Board's policy allowed the Board to punish Plaintiff without a judicial trial, in violation of Plaintiff's rights under the Bill of Attainder Clause.  Plaintiff's second claim alleges that he was punished under the Parole Board's policy for having a mental condition of being predisposed to commit sex offenses, in violation of the Eighth Amendment's bar on cruel and unusual punishment. Plaintiff's third claim alleges that, in reaching its decision to deny Plaintiff parole, the Parole Board failed to use the correct standard governing parole of inmates sentenced under SOLSA, in violation of Plaintiff's procedural due process rights under the Fourteenth Amendment. Plaintiff's fourth claim alleges that the Parole Board's failure to provide a reason to support its conclusion that Plaintiff posed "Risk Control Problems" also violated his Fourteenth Amendment procedural due process rights.  Finally, Plaintiff's fifth claim alleges that the Parole Board violated his Fourteenth Amendment procedural due process rights by denying him an opportunity to confront, question, or otherwise rebut adverse statements made by the victim.

Defendant's Motion to Dismiss was filed on December 10, 2012.  (*See* Mot. Dismiss.) Plaintiff filed his Response on January 11, 2013 (Doc. No. 10 [Resp. Mot. Dismiss]) and Defendant filed his Reply on February 13, 2013 (Doc. No. 20 [Reply Mot. Dismiss]). Accordingly, this matter is ripe for the court's review and recommendation.

**LEGAL STANDARD**

**A.      *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss,

means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.*  The *Iqbal* evaluation requires two

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not

entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare

assertions, or merely conclusory. *Id.* at 1949–51.  Second, the Court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.  If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at

1950.

Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998). "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citation omitted). "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949

(citation omitted).

## ANALYSIS

### A.     *Preliminary Jurisdictional Issue*

As a threshold matter, the court notes that Defendant initially argued in his Motion that

Plaintiff's claims are not cognizable under § 1983 because challenges to "the very fact or

duration of [a prisoner's] physical confinement itself," or actions "seeking immediate release or

a speedier release from confinement" must be brought as a habeas corpus action. (Mot. Dismiss

at 2) (quoting *Prieser v. Rodriguez,* 411 U.S. 475, 498 (1973)). In his Response, Plaintiff

clarifies that he does not seek immediate release on parole and does not attack the validity of his

conviction or sentence.  Instead Plaintiff seeks a "valid and fair parole hearing."  (Resp. at 1-2.)

In light of this clarification, Defendant appears to concede that this action is properly brought

under § 1983.  (*See* Reply at 1-2.)

The court agrees that Plaintiff's claims are properly brought under § 1983.  Plaintiff's

requests for relief make clear that he does not seek to be immediately released on parole and that

he does not attack the validity of his conviction or sentence.  (*See* Compl. at 16.)  Rather, he

seeks to invalidate the Parole Board's policies for evaluating sex offender parole requests, an

explanation of the grounds for denying him parole, and a new parole hearing.  (*See id.*)  Where a

"district court determines that [a] plaintiff's action, even if successful will *not* demonstrate the

invalidity of any outstanding criminal judgment against the plaintiff, the action should be

allowed to proceed [as a § 1983 action], in the absence of some other bar to the suit."  *Heck v.

Humphrey,* 512 U.S. 477, 487 (1994).  Accordingly, the court agrees with the parties that

Plaintiff's claims are properly brought under § 1983.

**B.      First Claim – Bill of Attainder Clause**

Defendant argues that Plaintiff's first claim for violations of his rights under the Bill of

Attainder Clause fails to state a claim for relief because the Parole Board's policies do not

constitute a legislative act.  (Mot Dismiss at 7-10.)  The court agrees.

A bill of attainder "*legislatively* determines guilt and inflicts punishment upon an

identifiable individual without provision of the protections of a judicial trial."  *Nixon v. Adm'r of

Gen. Servs.,* 433 U.S. 425, 468 (1977) (emphasis added).  Plaintiff acknowledges that the Parole

Board is not a legislative body, but instead is part of the executive branch of the Colorado state

9

government.  (*See* Resp. Mot. Dismiss at 7.)  *See also People v. Gallegos,* 975 P.2d 1135, 1138

(Colo. App. 1998) (The parole board is an entity in the executive branch).

Plaintiff nevertheless maintains that, under the Supreme Court's decision in *Garner v.*

*Jones,* 529 U.S. 244 (2000), a parole board policy may constitute a legislative action subject to

the Bill of Attainder Clause.  (Resp. at 7-8.)  *Garner,* however, did not concern a claim under the

Bill of Attainder Clause; instead the Court considered whether a parole board's policy violated

the Constitution's *Ex Post Facto* Clause.  *See* 529 U.S. at 249-50.  Plaintiff has not submitted,

nor can the court otherwise locate, any decision extending *Garner's* reasoning to the bill of

attainder context.

Furthermore, contrary to Plaintiff's position that the *Ex Post Facto* and the Bill of

Attainder clauses are "fundamental[ly] similar[]" (Resp. at 8), the argument that a regulatory

action is subject to bill of attainder constraints "is a novel contention that has *not been adopted*

*in this Circuit.*"  *Walmer v. U.S. Dep't of Defense,* 52 F.3d 851, 855 (10th Cir. 1995) (emphasis

added) (affirming denial of preliminary injunction because the plaintiff had not established a

likelihood of success on the merits).  Indeed, "[t]he bulk of authority suggests that the

constitutional prohibition against bills of attainder applies to legislative acts, not to regulatory

actions of administrative agencies."  *Id.*; *see also Korte v. Office,* 797 F.2d 967, 972 (Fed. Cir.

1986) ("The clause is a limitation on the authority of the legislative branch . . . [not] the

executive branch."); *Marshall v. Sawyer,* 365 F.2d 105, 111 (9th Cir. 1966) ("[T]he fact that

[regulatory documents] were not legislative acts deprives them of status as bills of attainder in

the constitutional sense."); *cf. Dehainaut v. Pena,* 32 F.3d 1066, 1070-71 (7th Cir. 1994) (noting

10

that "the Supreme Court has not directly ruled either way on the applicability of the attainder ban

to actions of executive and administrative agencies, and an argument can be made for analyzing

each case functionally rather than structurally.")

Thus, because there is no Supreme Court or Tenth Circuit authority holding that the Bill

of Attainder Clause applies to regulatory actions of executive branch entities, the court finds that

Plaintiff's first claim fails to state a claim for relief.  Accordingly, Defendant's Motion to

Dismiss is properly granted as to this claim.

**C.    *Second Claim – Eighth Amendment***

Defendant argues that Plaintiff's second claim fails to state a claim for relief under the

Eighth Amendment.  (Mot. Dismiss at 4-7.)  The court agrees.

Plaintiff's second claim asserts that the Eighth Amendment, made applicable to the states

through the Fourteenth Amendment, prohibits states from punishing individuals for having a

mental condition, as opposed to distinct acts.  (Compl. ¶ 51.)  Although this generally is a correct

statement of law, *see Robinson v. California,* 370 U.S. 660, 666 (1962), it is inapposite to

Plaintiff's allegations.  In *Robinson,* the Supreme Court held that a "statute which makes the

'status' of narcotic addiction a criminal offense" violated the Eighth Amendment's prohibition

on cruel and unusual punishment.  *Id.* at 666-67.  *See also Perkins v. Kan. Dep't of Corrs.,* 165

F.3d 803, 811 (10th Cir. 1999) (finding that requiring an inmate to wear a face mask because he

was HIV positive may violate the Eighth Amendment insofar as it punished the plaintiff for his

physical condition, rather than a distinct act); *Anderson v. Romero,* 72 F.3d 518, 526 (7th Cir.

1995) (refusing to allow inmate to exercise or get a haircut based on his HIV-positive status

amounted to punishment for a physical condition, as distinct from acts, in violation of the Eighth Amendment). Here, however, Plaintiff pleaded guilty and was sentenced to a prison term of three years to life, because he committed a Class IV felony sex offense. (Compl. ¶ 26.) Thus, Plaintiff was not punished for his status or mental condition of being predisposed to committing sex offenses; instead he was punished because he committed a sex offense, a volitional criminal act.

Plaintiff also relies on two Ninth Circuit Court of Appeals cases, *Ohlinger v. Watson,* 652 F.2d 775 (9th Cir. 1980), and *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 469 (9th Cir. 1989), to support his second claim. (Resp. at 3.) In *Ohlinger,* the Ninth Circuit held, based in part on *Robinson,* that sex offenders sentenced to an indeterminate term based on their predisposition toward committing sex offenses "had a constitutional right to such individual treatment as would give each of them a realistic opportunity to be cured or to improve his or her mental condition." 652 F.2d at 778-79 *accord Balla,* 869 F.2d at 468-69. However, it does not appear that any court in the Tenth Circuit, let alone the Tenth Circuit itself, has adopted *Ohlinger's* view that a failure to provide adequate treatment to indeterminately-sentenced sex offenders violates the Eighth Amendment.[2]

Moreover, to find Plaintiff's second claim viable, this court would have to further extend *Ohlinger's* "narrow[]" holding, *Balla,* 869 F.2d at 469, to find that any action motivated by "punitive" considerations violates an indeterminately-sentenced sex offender's Eighth

---

[2] Instead, at least one decision from this district has concluded that a sex offender has constitutionally protected interest in receiving such treatment. *See Beebe v. Heil, infra.*

Amendment right to be free from cruel and unusual punishment.  The court declines Plaintiff's invitation to take this approach in light of the fact that the Tenth Circuit has not adopted even *Ohlinger's* underlying holding.

Instead, in the Tenth Circuit, imprisonment beyond one's term can constitute cruel and unusual punishment for purposes of the Eighth Amendment.  *Mitchell v. N.M. Dept. of Corrs.,* 996 F.2d 311, 1993 WL 191810, at *3 (10th Cir. June 1, 1993) (unpublished table opinion) (citing *Sample v. Diecks,* 885 F.2d 1099, 1108-10 (3d Cir. 1989)).  As Plaintiff was sentenced to an indeterminate term of three years to life, it is clear that the Parole Board's decision to deny parole did not result in Plaintiff being imprisoned beyond his term.  *See also Malek v. Haun,* 26 F.3d 1013, 1016 (10th Cir. 1994) ("Because [] prisoners have no legitimate entitlement to parole prior to the completion of their sentence, neither the denial of parole nor the lack of enforceable parole guidelines can constitute cruel and unusual punishment . . . .").

Altogether, for the foregoing reasons, the court finds that Plaintiff second claim fails to state a claim for relief under § 1983 for violations of his Eighth Amendment rights.  Accordingly, the court finds that Defendant's Motion to Dismiss is properly granted as to this claim.

**D.      *Third, Fourth, and Fifth Claims – Procedural Due Process***

Defendant argues that Plaintiff's third, fourth and fifth claims, which allege that Defendant violated Plaintiff's procedural due process rights by depriving him of certain procedural protections at his May 2011 Parole Hearing, fail to state a claim for relief.  The court agrees.

13

Generally, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Brammer-Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1209 (10th Cir. 2007). First a plaintiff must demonstrate that he possesses a protected liberty or property interest, and second, a plaintiff must show the procedure utilized to deprive him of that liberty or property interest were inadequate under the circumstances. *Id.*

As to the protected interest prong, "[f]inding such a [deprivation] in the prison setting is particularly daunting[, but] although an inmate's rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Chambers v. Colo. Dep't of Corrs.,* 205 F.3d 1237, 1242 (10th Cir. 2000) (quotation omitted). In this case, the parties agree that the relevant inquiry is whether SOLSA "grant[s] inmates liberty interests to which due process protections apply." *Id.; see also Wolff v. McDonnell,* 418 U.S. 539, 557 (1974) (a state may create prisoner rights through the use of mandatory statutory language even where the right may not otherwise exist).

Plaintiff appears to acknowledge case law holding that SOLSA does not endow sex offenders with a liberty interest in parole. (Resp. at 10.) *See also Beylik v. Estep,* 377 F. App'x 808, 812 (10th Cir. 2010) (decision to grant parole under SOLSA is "wholly discretionary" and thus "does not create a liberty interest entitled to due process protection."); *Beebe* v. *Heil,* 333. F. Supp. 2d 1011, 1014 (D. Colo. 2004) (citing *Martinez v. Furlong,* 893 P.2d 130, 131 (Colo. 1995)) (an inmate has no liberty interest in parole under Colorado's indeterminate sentencing scheme because the scheme vests full discretion to grant parole in the Parole Board). Further,

14

although Plaintiff may have a cognizable liberty interest in receiving the treatment required under SOLSA, *see Beebe,* 333 F. Supp. 2d at 1016-17, that interest is not implicated here because Plaintiff admits that he has received appropriate treatment (Compl. ¶¶ 30-31).

Instead, Plaintiff attempts to side-step through these authorities by arguing that he has a constitutionally protected liberty interest in receiving a proper and fair parole hearing.  (Resp. at 10.)  In particular, Plaintiff maintains that he has a liberty interest in receiving a parole hearing and that the use of punishment considerations to deny his parole was "tantamount to not providing a parole hearing at all."  (Compl. ¶ 60.)

Plaintiff's argument has some facial support in SOLSA, insofar it requires that the Parole Board schedule a parole hearing after a sex offender has completed the minimum-mandatory term of his sentence.  Colo. Rev. Stat. § 18-1.3-1006(a)(1) ("On completion of the minimum period of incarceration specified in a sex offender's indeterminate sentence . . . the parole board *shall* schedule a hearing to determine whether the sex offender may be released on parole.") (emphasis added); *see also* § 18-1.3-1006(1)(c) ("If the parole board does not release the sex offender on parole . . . the parole board *shall* review such denial at least once every three years . . . .") (emphasis added).  At least one decision from this district has recognized that SOLSA may create a liberty interest in being considered for parole.[3]  *Purdy v. Brill,* No. 09-cv-00944-WYD,

_____

[3] The court notes that Plaintiff's claim that he was deprived of a constitutionally protected liberty interest in receiving an adequate parole hearing is somewhat circular.  More specifically, Plaintiff's purported liberty interest and the procedural protections allegedly necessary to protect that interest are one and the same.  In other words, Plaintiff's procedural due process claims effectively asserts that Plaintiff is entitled to a more full panoply of procedural protections at his parole hearing before he may be deprived of his liberty interest in that parole hearing.  Nevertheless, the court does not address this peculiarity because it finds that the

15

2011 WL 834179, at *13 (D. Colo. March 4, 2011) (unpublished) ("At the most, [SOLSA] may create a constitutionally protected interest in receiving consideration for parole."); *see also Wildermuth v. Scott,* No. 96-1167, 1996 WL 547313, at *1 (10th Cir. 1996) (unpublished table opinion) (recognizing that a state may create a protected liberty interest in review of parole decisions).

Nevertheless, even assuming, without deciding, that Plaintiff had a constitutionally protected liberty interest in receiving consideration for parole, the court finds that the procedures implemented to protect that interest were constitutionally adequate.  In *Greenholtz v. Inmates of Nebraska Penal and Corrections Complex,* 442 U.S. 1 (1979), the Supreme Court outlined the procedural protections necessary where a state had created a legitimate expectation of release on parole.  The Court began with the premise that it is "axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* at 12 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).  And like "most parole statutes," the state parole statute before the *Greenholtz* Court vested "very broad discretion in the Board," and "the Parole Board's decision . . . is necessarily subjective in part and predictive in part."  *Id.* at 13; *see also Beylik v. Estep,* 377 F. App'x at 812 (decision to grant parole under SOLSA is "wholly discretionary").

> No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior.  Our system of federalism encourages this state experimentation.

procedural protections afforded to Plaintiff were adequate.

> If parole determinations are encumbered by procedures that the states regard as burdensome or unwarranted, they may abandon or curtail parole.

*Greenholtz,* 442 U.S. at 13 (citations omitted).

In addition, the Court noted that the ultimate purpose of parole is rehabilitation. *Id.* Thus, the court found that this objective cannot be served by "invit[ing] or encourag[ing] a continuing state of adversary relations between society and the inmate." *Id.*

Thus, "[p]rocedures designed to elicit specific facts . . . are not necessarily appropriate to a [] parole determination." *Id.* (citations omitted). "Merely because a statutory expectation exists cannot mean that in addition to the full panoply of due process required to convict and confine there must also be repeated, adversary hearings in order to continue the confinement." *Id.* Instead, in the context of a parole hearing, an inmate receives adequate process when he is allowed "an opportunity to be heard" and is provided a statement of the reasons why parole was denied. *Id.* at 16.

In light of *Greenholtz,* the court finds that Plaintiff's procedural due process claims fail. Plaintiff's fifth claim alleges that Plaintiff's procedural due process rights were violated because Plaintiff was not permitted to confront, question, or otherwise rebut the victim's adverse statements at his parole hearing. (Compl. ¶¶ 74-75.) Courts have roundly concluded that a prisoner at a parole hearing has no constitutional right to confront and cross-examine adverse witnesses. *Toolasprashad v. Grondolsky,* 570 F. Supp. 2d 610, 619 (D.N.J. 2008); *Sanders v. Salazar,* No. EDCV 09-2016 DMG (JCG), 2011 WL 1671831, at *3 (C.D. Cal. Feb. 28, 2011), *recommendation adopted at* 2011 WL 1671811 (C.D. Cal. May 4, 2011); *United States ex rel.*

*Lenea v. Lane,* No. 83 C 2317, 1987 WL 4988, at *2 (N.D. Ill. May 27, 1987).  In light of

*Greenholtz's* conclusion that procedures designed to elicit specific facts are unnecessary at a

parole hearing, 442 U.S. at 13, the court agrees with these decisions and finds that Plaintiff was

not entitled to confront, question, or otherwise rebut the victim's statements at his parole

hearing.

        As to Plaintiff's third claim, Plaintiff alleges that, in evaluating Plaintiff's eligibility for

parole, the Parole Board failed to apply the proper criteria under Colo. Rev. Stat. § 18-1.3-

1006(1)(a).  However, the Supreme Court has made clear that "the minimum procedures

adequate for due-process protection" in the context of a parole hearing "are those set forth in

*Greenholtz*"—namely, "an opportunity to be heard" and a "statement of the reasons why parole

was denied."  *Swarthhout v. Cooke,* 131 S. Ct. 859, 863 (2011) (citing *Greenholtz,* 442 U.S. at

16).[4]  The Supreme Court has "long recognized that a mere error of state law is not a denial of

due process."  *Id.* (internal quotations and citation omitted).  Indeed, to hold otherwise "would

subject to federal-court merits review the application of all state-prescribed procedures in cases

involving liberty or property interests . . . .  That has never been the law."  *Id.*  Ultimately,

"[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process

[Plaintiff] received, not whether the state court decided the case correctly."  *Id.*

_____

        [4] Although the *Swarthhout* Court was confronted with a petition for habeas corpus under
28 U.S.C. § 2254, this court finds that *Swarthout's* holding regarding the limited inquiry that
federal courts may conduct when confronted with a procedural due process challenge is
applicable here.

Thus, even assuming Plaintiff is correct that the Parole Board applied the wrong criteria to Plaintiff in the parole process (Compl. ¶ 61), Plaintiff's challenge does not implicate the due process protections required under *Greenholtz.*  Instead, it concerns only whether the Parole Board correctly applied state law.  As such, Plaintiff's challenge to the criteria used by the Parole Board fails to establish a procedural due process violation.

Finally, Plaintiff's fourth claim alleges that the Parole Board violated his procedural due process rights by failing to provide any explanation for its reliance on the preformulated category "Risk Control Problems – Needs Continued Correctional Treatment."  (Compl. ¶¶ 66-67.)  The Tenth Circuit rejected a similar argument in *Schuemann v. Colo. State Bd. of Adult Parole,* 624 F.2d 172, 174 (10th Cir. 1980).  There, a prisoner contested the parole board's decision to deny him parole because the reasons provided by the Parole Board in a notice form were allegedly vague and inadequate.  *Id.*  The Tenth Circuit concluded that, in light of *Greenholtz,* "[i]t would be discordant to require unduly specific and detailed reasons from a Board vested with a subjective, predictive, and experimental function."  *Id.*  The court further concluded that it was "evident from the notice form . . . that the Board was concerned about the short time [the prisoner] had served for a serious offense," which was "a sufficient and proper reason" for denying parole.  *Id.*; *see also Mulberry v. Neal,* 96 F. Supp. 2d 1149, 1152 n.3 (D. Colo. 2000) (citing *Schuemann,* 624 F.2d at 174) (a terse explanation of the grounds for denying parole is sufficient); *Ragins v. Gilmore,* 48 F. Supp. 2d 566, 570 (E.D. Va. 1999) ("boiler-plate" language in support of a decision to deny parole is sufficient under *Greenholtz*).

19

Here, Plaintiff was advised, via the "Notice of Colorado Parole Board Action," that, in addition to "Aggravating Factors (Circumstances of Offense)," his release on parole would pose "Risk Control Problems" and thus that "Continued Correctional Treatment" was required. (Compl. ¶ 33.)  In light of the subjective nature of parole determinations, this is a sufficient explanation of the grounds relied on by the Parole Board to deny Plaintiff parole.  Accordingly, the court finds that, as alleged, Plaintiff's fourth claim fails to establish a claim for violations of his procedural due process rights.

Altogether, for the foregoing reasons, the court finds that Plaintiff's third, fourth, and fifth claims fail to state a claim for violations of Plaintiff's Fourteenth Amendment procedural due process rights.  Accordingly, the court finds that Defendant's Motion to Dismiss is properly granted as to these claims.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendant's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" (Doc. No. 7) be GRANTED and that Plaintiff's Complaint (Doc. No. 1) be dismissed with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

       Dated this 27th day of March, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge