**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

**Civil Action No. 12-cv-02794-MSK-KMT**

**DERRICK A. DAVIES,**

       **Plaintiff,**

v.

**ANTHONY P. YOUNG, in his official capacity as Chairman of the Colorado Board of Parole,**

       **Defendant.**

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS**

**THIS MATTER** comes before the Court on the Recommendation **(#25)** of United States Magistrate Judge Kathleen M. Tafoya that the Defendant Anthony P. Young's Motion to Dismiss **(#7)** be granted. The Plaintiff Derrick A. Davies filed timely Objections **(#27)** to the Recommendation.

**I.  Background**

The following facts are derived from the allegations set forth in the Complaint **(#1)**.

Mr. Davies is an inmate within the Colorado Department of Corrections ("CDOC"). In 2005, Mr. Davies pled guilty to a Class IV Felony sex offense under C.R.S. § 18-3-405.3(1). On May 1, 2006, Mr. Davies was sentenced to imprisonment for an indeterminate term of three years to life, in accordance with the Colorado Sex Offender Lifetime Supervision Act ("SOLSA"), C.R.S. § 18-1.3-1004(1)(a).

In June 2008, Mr. Davies entered Phase I of CDOC's Sex Offender Treatment and Monitoring Program. He completed Phase I in January 2009. Mr. Davies then entered, and

continues to participate in CDOC's Modified Phase II Group and Follow-Up Group sex offender treatment.

On May 17, 2010, the CDOC recommended that Mr. Davies be granted parole, explaining that he sufficiently "meets Sex Offender Management Board treatment criteria" to be considered eligible for release. Mr. Davies appeared before the Parole Board for a hearing in May 2011. At the hearing, Mr. Davies' victim was permitted to speak as to why he should not be released. Mr. Davies was not given an opportunity to confront or question the victim as to the accuracy or veracity of her statements.

On May 31, 2011, the Parole Board denied release.[1] It issued a "Notice of Colorado Parole Board Action" that indicated that its reasons for its denial were: (1) "Aggravating Factors (Circumstances of Offense)," and (2) "Risk Control Problems – Needs Continued Correctional Treatment." The Parole Board did not provide any further explanation of how Mr. Davies posed "Risk Control Problems."

Mr. Davies commenced this action, alleging that certain actions or policies by the Parole Board violate his constitutional rights. He asserts five claims, all under 42 U.S.C. § 1983: (1) violation of the Bill of Attainder Clause, in that the Parole Board inflicted additional punishment, beyond his minimum mandatory sentence, without a judicial trial, (2) violation of his Eighth Amendment right to be free from cruel and unusual punishment, in that he was punished for having a mental condition of being predisposed to commit sex offenses, (3) violation of his Fourteenth Amendment right to procedural due process, in that the Parole Board failed to use the correct standard governing parole of inmates sentenced under SOLSA, (4) a separate procedural due process violation resulting from the Parole Board's failure to provide a reason for its

---

[1] The Complaint states that Mr. Davies was scheduled for a new parole hearing in June 2013. The parties have not indicated whether such a hearing was held and, if it was, its outcome.

conclusion that he posed "Risk Control Problems," and (5) another procedural due process violation in that the Parole Board denied him an opportunity to confront, question, or otherwise rebut statement made by the victim at his parole hearing.

The Parole Board moves **(# 7)** to dismiss all of Mr. Davies claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court referred that motion to the Magistrate Judge, and on March 27, 2013, the Magistrate Judge recommended **(# 25)** that the motion be granted and that all claims be dismissed with prejudice. The Magistrate Judge concluded that the claims were properly brought under 42 U.S.C. §1983 and that the court had appropriate subject-matter jurisdiction over them, but that all of the claims failed to sufficiently state a cause of action under Rule 12(b)(6)

Mr. Davies filed timely Objections **(# 27)** to the Recommendation, raising arguments the Court will detail in its analysis. The Parole Board did not file a response to the Objections.

## II. Standard of Review

When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The district court shall make a *de novo* determination of those portions of the recommendation to which timely and specific objection is made. *U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the Complaint **(#1)** as true and view those allegations in the light most favorable to Mr. Davies. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court must limit its consideration to the four corners of the Complaint,

any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions as true and ascertains whether those facts, coupled with the law establishing the elements of the claim, support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### III. Analysis

#### A. Bill of Attainder Claim

Mr. Davies alleges that the Parole Board's "punishment Policy 1" violates the Bill of Attainder Clause, in that the Board may (and in his case, did) deny parole based upon aggravating circumstances of the original offense. He alleges that the policy "inflicts punishment" for the original offense without a judicial trial. In seeking dismissal, the Parole Board argued that this claim must be dismissed because the policy identified by Mr. Davies does not constitute a "legislative act."

The Bill of Attainder clause of the United States Constitution provides that "No state shall . . . pass any Bill of Attainder . . . ." U.S. Const., Art. I, § 10, cl. 1. A Bill of Attainder "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977). To determine whether a statute constitutes a Bill of Attainder, the Court considers whether: (1) the challenged statute falls within the historical meaning of legislative punishment; (2) the statute, viewed in terms of the type and severity of the burdens imposed, reasonable can be said to further a nonpunitive legislative purpose; and (3) the legislative record indicates a congressional intent to punish. *Taylor v. Sebelius*, 189 Fed.Appx. 752, 758 (10th Cir. 2006) (unpublished), *citing Selective Service Sys. v. Minn. Public Interest Research Group*, 468 U,S, 841, 852 (1984).

The Magistrate Judge found that Mr. Davies' Bill of Attainder claim failed to state a cause of action because a decision by the Parole Board is not a "legislative" action; Mr. Davies responds that in *Garner v. Jones*, 529 U.S. 244 (2000), the Supreme Court found a parole board's decision to adversely modify its own regulations governing the time period between an inmate's parole hearings constituted a violation of the *ex post facto* clause (the Bill of Attainder's textual neighbor in Art. I, § 10). Even assuming that *Garner* stands for the proposition that a parole board's act can be considered "legislative" in nature – although that issue is not addressed in any way in *Garner* – that case is nevertheless distinguishable in that the challenged action there was the parole board's modification of its own regulations, not a determination of an individual's suitability for parole. Promulgation of regulations is akin to a legislative act, whereas an individualized determination of a particular individual's case is more akin to a judicial or executive decision. Thus, the Court finds Mr. Davies' citation of *Garner* for the

proposition that the Parole Board's determination of his parole suitability was "legislative" in nature to be inapposite.

Moreover, the Court finds Mr. Davies' Bill of Attainder claim to be flawed in a more fundamental way. A denial of parole release is not the imposition of any new and separate "punishment," legislative or otherwise. .Release on parole is simply a continuation of the inmate serving out the terms of his judicially-imposed sentence, still under the supervision of the Department of Corrections, albeit with certain privileges granted to the inmate to facilitate his successful return to society. *Danielson v. Dennis*, 139 P.3d 688, 692-93 (Colo. 2006); *People v. Norton*, 63 P.3d 339, 344 (Colo. 2003) (a period of parole "is nevertheless part of the punishment imposed on a criminal wrongdoer"). Thus, a denial of parole release is nothing more than a requirement that the inmate continue to serve his sentence inside of prison, rather than outside it. *Id.* Although denied parole, Mr. Davies has only ever been subjected to a single "punishment," namely, the judicial imposition of his sentence of imprisonment. Thus, the Court finds that he has failed to allege facts showing that his parole denial can be deemed to constitute a Bill of Attainder.[2]

### B. Eighth Amendment Claim

Mr. Davies claims that a policy that he identifies as the Parole Board's "Policy 1" – that is " punishment or additional punishment beyond the minimum mandatory sentence may be inflicted in the release decision as to offenders sentenced under the Lifetime Supervision Act" – constitutes a violation of his Eighth Amendment right to be free from cruel and unusual punishment because it punishes him because of his "status . . . .of having a mental condition

---

[2] Indeed, if Mr. Davies is correct, every single instance in which parole is denied to an inmate based on the circumstances of that inmate's underlying crime would constitute a prohibited Bill of Attainder.

predisposing him to commit sex offenses, as distinct from his acts for which he has already served the punishment phase of his incarceration."

The crux of Mr. Davies' argument on this point is his belief that he has already completed the "punishment" phase of his sentence, and that his continued incarceration on the remaining indeterminate portion of his sentence is intended to serve as some form of non-punitive "rehabilitation" phase. (In other words, he contends that he has served the sentence for his crime, and that he remains incarcerated simply because of his "status" as a sex offender, rather than for any particular action he has taken.) He derives this understanding from his reading of *Vensor v. People*, 151 P.3d 1274 (Colo. 2007).

In *Vensor*, the Colorado Supreme Court considered a defendant's contention that his sentences for sex offenses – indeterminate sentences of 25 years to life – violated Colorado's sentencing scheme. *Vensor* explains Colorado's "complex scheme of interlocking statutes" that constitute the indeterminate sentencing scheme for felonies, particularly sex offenses under SOLSA. *Id.* at 1276. First, it noted that C.R.S. § 18-1.3-401 sets forth "presumptive" sentencing ranges that apply to each class of felonies – for example, a Class 4 felony (the type Mr. Davies pled guilty to) has a presumptive sentencing range of two to six years of imprisonment. *Id;*, *see* C.R.S. § 19-1.3.401(1)(E)(IV)(A). Upon a finding of aggravating circumstances, sentencing courts may impose a sentence of as much as twice the maximum of the presumptive range. *Id.*, *citing* C.R.S. § 18-1.3-401(6). If the underlying felony is a sex offense, SOLSA "requires that he be sentenced to the custody of the department of corrections for an indeterminate range of at least the minimum of the presumptive range [set forth above], and a maximum of the sex offender's natural life." *Id.*, *citing* C.R.S. § 18-1.3-10004(1)(a). Once the offender completes

7

the minimum period of incarceration imposed in the sentence, he is eligible for release on a minimum 10-year period of parole. *Id.*, *citing* C.R.S. § 18-1.3-1006(1).

The question presented in *Vensor* concerned the extent to which SOLSA's requirement that a sex offender be sentenced to "at least the minimum of the presumptive range" granted discretion to the sentencing court to impose a minimum sentence far in excess of the presumptive range. In Mr. Vensor's case, his plea to a Class 4 felony sex offense (like that of Mr. Davies here) exposed him to a presumptive maximum sentence of 6 years. It appears that the trial court made certain findings about the "extraordinary risk" of Mr. Vensor's crimes and the presence of aggravating factors that, cumulatively, increased his presumptive maximum sentence to 16 years.[3] However, the trial court sentenced Mr. Vensor to a period of 25 years to life. Mr. Vensor argued that the decision to sentence him to a minimum term well in excess of his presumptive maximum sentence was unlawful, and the Colorado Supreme Court agreed, finding that the statute "require[d] an indeterminate sentence for the class two, three, and four felony sex offenses to which it applies, consisting of an upper term of the sex offender's natural life and a lower term of a definite number of years, not less than the minimum nor more than twice the maximum of the presumptive range authorized for the class of felony of which the defendant stands convicted." *Id.* at 1279.

Mr. Davies argues that *Vensor* stands for the proposition that "the Colorado Supreme Court interprets the statutory scheme [to provide] incarceration for punishment (minimum mandatory period) and incarceration for rehabilitation (indeterminate to-life period)." It is not entirely clear how Mr. Davies derives this bifurcated sentencing purpose from *Vesnsor*, which, as noted above, was concerned solely with the question of whether a sentencing court could impose

---

[3]    6 years base maximum sentence (C.R.S. § 18-1.3-401(1)(a)(V)(A), plus two years due to the crime presenting an "extraordinary risk to society" (C.R.S. § 18-1.3-401(10), for a total of 8 years, which is then doubled due to a finding of aggravating circumstances (C.R.S. § 18-1.3-401(6)).

8

a higher minimum sentence term than the presumptive statutory range allowed. It appears that Mr. Davies derives his belief from a single sentence in *Vensor*, in which the Court explained that the statutory "declaration of purpose" of SOLSA refuted the notion that the "lower component [of a sentence was] limited only by the requirement that it not drop below the presumptive range." *Id.* at 1278. As the Court explained, "[the] declaration of purpose makes clear the legislature's intent to provide for treatment and extended supervision, rather than to punish sex offenders with terms of incarceration longer than those of other felons of the same class." *Id.* This language does not establish the remarkable proposition urged by Mr. Davies – that a SOLSA sentence is composed of a "punishment" phase, that is completed upon the inmate serving the minimum term of the sentence, coupled with a non-punitive "rehabilitation" phase, consisting of the remaining incarceration of the inmate solely for treatment purposes. Rather, the language means precisely what the Court addressed in *Vensor* – that minimum sentences for sex offenders in excess of the presumptive statutory range would "serve to punish sex offenders" with longer terms of mandatory imprisonment than non-sex offenders.

Mr. Davies' misunderstanding of the sentencing scheme infects the remainder of his Eighth Amendment (and other) arguments. He assumes that, because he has completed the minimum term of his three years-to-life sentence, he has fully discharged the "punishment" for his offense and that his continued incarceration is being imposed solely for treatment purposes. This is clearly not the case, as there is no reasonable basis to understand Colorado's sentencing scheme to contain such a bifurcation of purpose. The three years-to-life sentence imposed on Mr. Davies was just that: a directive that he serve a <u>minimum</u> of at least three years of incarceration, plus as much additional time in custody as the Parole Board may determine is necessary before he is deemed fit to be released on parole. The Parole Board having yet to find

that Mr. Davies meets that requirement, he remains properly incarcerated as punishment for his crime. Accordingly, the Court finds that Mr. Davies' Eighth Amendment claim fails to state a cause of action.

### C. Procedural Due Process Claims

Mr. Davies' remaining three claims allege various violations of his right to procedural due process under the Fourteenth Amendment of the United States Constitution. The Due Process Clause states, "No state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. To allege a violation of procedural due process, a plaintiff must first establish a deprivation of an interest in life, liberty, or property. *See Elliot v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). "Finding such a [deprivation] in the prison setting is particularly daunting[, but] although an inmate's right may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quotation omitted). A liberty interest may be implicated when prison authorities impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* State laws may also "grant inmates liberty interests to which due process protections apply." *Id.* Where a liberty interest exits, the second inquiry is "whether the procedures followed by the government in depriving [the inmate] of that interest comported with due process of law." *Elliott*, 675 F.3d at 1244.

Although the Parole Board's motion argued that Mr. Davies had no particular liberty or property interest entitling him to any type of parole hearing or particular process during such a hearing, the Magistrate Judge assumed, without deciding, that SOLSA created an affirmative entitlement to a parole hearing for offenders like Mr. Davies. *Citing* C.R.S. § 18-1.3-1006(a)(1)

10

("the parole board <u>shall</u> schedule a hearing to determine whether the sex offender may be released on parole"). The Supreme Court used to find protected state-created liberty interests where the state had resorted to mandatory language directing that a certain act occur (*e.g.* "shall schedule a hearing"), *see Washington v. Harper*, 494 U.S. 210 221 (1990), *citing Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983), but the Court has since abandoned that approach, at least in the prison context, as "difficult to administer and [one] which produces anomalous results." *Sandin v. Conner*, 515 U.S. 472, 484 n. 5 (1995). Now, with certain exceptions,[4] a prisoner has a liberty interest only in avoiding those types of restraint that "impose[ ] atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Id.* In the post-*Sandin* environment, courts have typically found that a denial of parole release does not rise to that level. *See Kotz v. Lappin*, 515 F.Supp.2d 143, 149 (D.D.C. 2007) ("a prisoner who is denied parole will never suffer an 'atypical' or 'significant hardship' as compared to other prisoners. He will continue to serve his sentence under the same conditions as his fellow inmates"); *Ross v. Snyder*, 239 F.Supp.2d 397, 400-01 (D.Del. 2002). Thus, this Court is less sanguine that Mr. Davies can state any due process claim regarding his denial of release on parole.

Nevertheless, even assuming that Mr. Davies had a liberty interest in parole release that could support a due process claim, the Court agrees with the Magistrate Judge that none of the alleged due process violations alleged by Mr. Davies are sufficient to state a claim. Mr. Davies alleges that he was denied due process in three separate respects: (1) that the Parole Board applied the wrong standard in denying him parole; (2) that the Parole Board failed to provide him with a meaningful explanation of the reasons for its denial; and (3) that the Parole Board

---

4  *Sandin* indicates that prison decisions that "exceed[ ] the setnecne in . . . an unexpected manner" may give rise to a liberty interest, giving examples of the transfer of an inmate to a mental hospital or the involuntary administration of psychotropic drugs. *Id.* at 484.

11

deprived him of the right to cross-examine his victim during the hearing. The Court will address each contention in turn.

The Court does not linger on the first question – whether the Parole Board applied the wrong standard when deciding to deny Mr. Davies' parole. Assuming (without necessarily finding) that Mr. Davies has a liberty or property interest in a parole determination that correctly implements the standards for parole release, the Court finds that Mr. Davies' argument on this point is merely a continuation of his idiosyncratic understanding of his sentence discussed above. His Complaint alleges that the "improper standard" the Parole Board applied to him was "the criteria applicable to general population inmates which incorporates a punishment consideration," rather than the special rule that "punishment is not a consideration in the release decision as to inmates sentenced under [SOLSA] once they are past their minimum mandatory period of incarceration." Nothing in Colorado law supports the contention that parole release decisions for sex offender inmates are considered any differently (or at least under a more lenient standard) than release decisions for other inmates, and thus, Mr. Davies' due process claim in this regard is dismissed.

The Court also finds little reason to dwell on the third question – whether Mr. Davies was deprived of due process when he was not permitted to cross-examine his victim during the parole hearing. In *Grenholtz v. Inmates of Nebraska*, 442 U.S. 1, 15, (1979), the Supreme Court found that a parole hearing procedure in which inmates were "permitted to appear before the Board and present letters and statements on [their] own behalf" was sufficient to satisfy the due process clause. As far as this Court can determine, no court has ever held that an inmate has a due process right to cross-examine witnesses called at a hearing to consider whether to grant parole.[5]

---

[5] It is well-established that an inmate has a limited due process right to cross-examine witnesses at a parole revocation hearing.

*See e.g. Fleming v. Murray*, 888 F.Supp. 734, 738 (E.D.Va. 1994), *citing Franklin v. Shields*, 569 F.2d 784, 795-96 (4th Cir. 1977) ("We agree with the district judge that these factors justify denial of the right to confront and cross-examine people who have furnished the Board information about the prisoner"). Mr. Davies does not point to particular authority for the proposition that due process requires that he be permitted to confront and cross-examine the victim at his parole hearing. His Objections cite only to *Toolasprashad v. Grondolsky*, 570 F.Supp.2d 610, 619 (D.N.J. 2008), as standing for the proposition that the right to cross-examine witnesses is a component of due process in such hearings. The cited portion of *Toolasprashad* is inapposite for several reasons: (i) the proposition set forth in the case is actually the opposite – that "in the absence of exceptional circumstances, a prisoner at a parole hearing has no constitutional right to call witnesses in his behalf or to confront and cross-examine adverse witnesses"; (ii) the proposition is mentioned only in the context of a historical discussion, addressing a claim that was made by the inmate in a prior lawsuit that was dismissed for failure to state a claim; and (iii) the proposition cites to the Circuit Court's opinion in *Greenholtz*, not the Supreme Court's finding that merely allowing the inmate an opportunity to be heard was sufficient. Even if *Toolasprashad* were the governing law, Mr. Davies has not identified any "exceptional circumstances" that warrant departing from the general rule that he has no due process right to cross-examine the victim at his parole hearing.

That leaves the final issue, Mr. Davies' complaint that the Parole Board's statement of the reasons for his denial was insufficiently conclusory. In *Greenholtz*, the Supreme Court rejected the notion that inmates are entitled to a denial notice that "specif[ies] the particular 'evidence' in the inmate's file or at his interview on which [the Parole Board] rests the discretionary determination that an inmate is not ready for conditional release." 442 U.S. at 15.

*Greenholtz* explains that a statement of reasons for a denial is offered simply as "a guide to the inmate for his future behavior," and that requiring a detailed statement of reasons "would tend to convert the process into an adversary proceeding and to equate the Board's parole-release determination with a guilt determination." *Id.* at 15-16. Thus, *Greenholtz* deemed it sufficient that "when parole is denied [the Board] informs the inmate in what respects he falls short of qualifying for parole" in largely general terms. *Id.* at 16.

Subequent to *Greenholtz,* the court in *Solomon v. Elsea*, 676 F.2d 282, 286 (7th Cir. 1982) found that due process required some degree of particular detail in the statement of denial:

> To satisfy minimum due process standards, a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or no reason at all. For this essential purpose, detailed findings of fact are not required, provided the decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision . . . and the essential facts upon which the [Board's] inferences are based.

However, this does not appear to be the requirement in the 10th Circuit. In *Schuemann v. Colorado State Board of Adult Parole*, 624 F.2d 172, 174 (10th Cir. 1980), the 10th Circuit affirmed the denial of an inmate's petition for a writ of *habeas corpus*, despite the inmate's claim that "the reasons given by the Board were vague, inadequate, and not supported by the record." the 10th Circuit found that "it would be discordant to require unduly specific and detailed reasons from a Board vested with a subjective, predictive, and experimental function," and that the Parole Board's use of a "notice form" (whose contents are not addressed in the decision) was sufficient because it was "evident . . . that the Board was concerned about the short time Schuemann had served for a serious offense." *Accord Mulberry v. Neal*, 96 F.Supp.2d 1149, 1152 n. 3 (D.Colo. 2000) (finding explanation that was described as "terse" but whose contents were otherwise unspecified to be sufficient).

14

According to the Complaint (which the Court takes as true), the explanation for the denial that Mr. Davies received stated merely: (1) "Aggravating factors (<u>Circumstances of Offense</u>)" [6] and (2) "Risk Control Problems – Needs Continued Correctional Treatment" without any further explanation.  Such terseness perhaps flirts with the very outer limits of what information the due process clause requires a statement of parole denial to contain, but the stated reasons do give Mr. Davies at least some notion of the reasons for his denial and allow this Court to ensure that such reasons are not "impermissible" considerations.  The particular emphasis given to the "Circumstances of Offense" phrase suggests that the Parole Board was especially troubled by the underlying facts of Mr. Davies' conviction, and while those facts are not disclosed to this Court, it is axiomatic that a Parole Board may properly consider the circumstances of the underlying offense in deciding whether to grant parole release.  The reference to "Risk Control Problems" or Mr. Davies' need for "Continued Correctional Treatment" is more vague and ambiguous.  The Court agrees that the salutary purposes of parole review would be ensuring that what *Greenholtz* describes as "a guide to the inmate for his future behavior" is provided, but in light of the fact that the Parole Board identified the circumstances of the offense as a separate basis for denying parole, the Court cannot say that the ambiguity of the "risk control problems" statement is sufficient to state a claim for a deprivation of due process.

## IV. Conclusion

For the forgoing reasons, the Plaintiff's Objections **(#27)** are **OVERRULED**, and the Recommendation of the United States Magistrate Judge **(#25)** is **ADOPTED** for the reasons

---

[6]   Mr. Davies contends that the a Parole Board representative had specifically underlined the phrase "Circumstances of Offense" on the pre-printed form.

15

stated herein.  The Defendant's Motion to Dismiss **(#7)** is **GRANTED**.  All claims in this action are **DISMISSED**, and the Clerk of the Court shall close this case.

Dated this 30th day of September, 2013.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge